**12CV7410**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA CALLOWAY, on behalf of himself and all others similarly situated, | ) ) Jury Trial Demanded ) |
| Plaintiff, | ) ) |
| v. | ) Case No. ) |
| TD AMERITRADE, INC., | ) ) |
| Defendant. | ) ) ) |

**FILED**
9/14/2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**JUDGE LEINENWEBER**
**MAGISTRATE JUDGE SCHENKIE**

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, JOSHUA CALLOWAY, on behalf of himself and all others similarly situated, and for his Class Action Complaint against TD AMERITRADE, INC. ("TD"), states as follows:

### INTRODUCTION

1. Plaintiff brings this class action complaint against Defendant to obtain relief for himself and similarly situated persons for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq.*

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a citizen of and resides in the State of Illinois.

3. Defendant TD is a corporation organized under the laws of New York, with its principal place of business in Omaha, Nebraska. TD regularly conducts business in Illinois. TD is a leading financial broker and investment advising service, which processed Plaintiff's employment application and subsequently employed Plaintiff at relevant times.

4. The Court has jurisdiction under the 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Jurisdiction is alternatively proper before the Court as prescribed by 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act. At least one member of each proposed class is a citizen of a State different from the States where Defendant is a citizens. Classes defined below number in excess of 100 members. Plaintiff is informed and/or reasonably believes that the amount in controversy in this proceeding exceeds the sum or value of $5,000,000, and Defendant is subject to personal jurisdiction in this judicial District. Defendant employs up to 5,000 employees and handles employee applications using centralized processes.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b). Defendant does business in this judicial District, and transactions or conduct giving rise to Plaintiff's claims occurred in part here.

## SUBSTANTIVE ALLEGATIONS

7. Plaintiff applied for a position as a Senior Software Developer with Defendant TD in 2010.

8. In September 2010, Mohamed Bakerywala, an agent of Defendant TD, sent Plaintiff an email containing a formal employment application for Plaintiff to fill out and return via facsimile to Defendant TD.

9. Contained within the application documents sent to Plaintiff was a form entitled "Authorization to Request Consumer Reports for Employment Purposes," Defendant TD's authorization form for compliance and authorization pursuant to the FCRA, which states in part:

> "Under the Fair Credit Reporting Act, TD AMERITRADE (as defined below) may request a consumer report if you authorize them to do so. these reports may be used to determine whether you are eligible for employment. …
>
> By signing below you authorize TD AMERITRADE Holding Corporation … to obtain **pre-employment consumer reports** including, but not limited to … criminal history … **National**

2

> ***Association of Securities Dealer's Central Registration Depository system check***… you also authorize TD AMERITRADE to obtain ***such consumer reports*** at any time post-hire without requiring additional authorization. The information obtained in any of these reports will not be used in violation of any federal, state or local law. Furthermore, before any adverse action is taken, based in whole or in part on any such report, a copy of the report will be provided to you, along with a statement of your rights."

*See* Group Exhibit A, Exhibit A-1 ("Authorization Form") (emphasis added).

10. Also contained within the application documents sent to Plaintiff was a form entitled "Acknowledgment," another of Defendant TD's authorization forms for compliance, "in accordance with applicable law, including, but not limited to, the Fair Credit Reporting Act." This form not only is proffered as an authorization and disclosure form to job applicants, but also is a purported indemnification form, stating in part:

> "I authorize any of the persons or organizations referred to in this application to provide TD AMERITRADE … any and all information concerning my previous employment, education, or any other information they might have, personal or otherwise, with regard to any of the subjects covered by this application, and ***I release all such parties from all liability for any damage that may result*** from furnishing such information to TD AMERITRADE. ***I authorize TD AMERITRADE to request and receive such information, and I will indemnify TD AMERITRADE against any liability that may result from it making such investigation or making an employment decision based on such information***…
>
> …and I expressly authorize TD AMERITRADE to obtain such reports and checks ***in accordance with applicable law, including, but not limited to, the Fair Credit Reporting Act,*** prior to and periodically throughout my employment with the company."

*See* Group Exhibit A, Exhibit A-2 ("Acknowledgment") (emphasis added)

11. Exhibit A-1 clearly states that Defendant TD considers "National Association of Securities Dealer's Central Registration Depository system checks" to be "consumer reports" for employment purposes.

3

12. As of July 30, 2007, the National Association of Securities Dealers (NASD) became known as the Financial Industry Regulatory Authority (FINRA).

13. FINRA operates the Central Registration Depository (CRD), which is used by corporations in the U.S. securities industry.

14. Thus, Defendant TD considers Web CRD reports (the present day name of a National Association of Securities Dealer's Central Registration Depository system check) to be consumer reports, obtained for employment purposes, and subject to the governance of the FCRA.

15. Exhibit A-2 requires applicants to authorize TD to obtain "reports and checks" about applicants history, without placing any limitation on what TD may obtain. Further, Exhibit A-2 authorizes TD to acquire "periodic (1) criminal background checks, (2) credit reports, (3) Web CRD background checks, and (4) Office of Foreign Assets Control checks" in conformity with the FCRA, but then indemnifies TD against "any liability that may result from … making an employment decision based on such information."

16. The authorization in Exhibit A-2 purports to both serve as part of TD's FCRA disclosure, as well as a separate authorization. This is improper as the inclusion of any liability waiver in such a document or indemnification is expressly prohibited by the Federal Trade Commission (hereinafter "FTC"), as enumerated per the FTC Opinion Letter dated June 12, 1998. Said letter states "…we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes..".

17. Plaintiff subsequently completed the application package, including the Authorization Form, and returned it to Defendant TD.

18. On or about September 17, 2010, Defendant TD sent Plaintiff an Offer of Employment as a Senior Software Developer, with an annual salary of $108,000, and a start date of September 27, 2010.

19. Said letter states, in direct conformity with the authorization TD believes to have obtained via the documents in Group Exhibit A, that all offers of employment are "contingent upon satisfactory completion of a pre-employment screening process which includes (1) criminal background check that includes fingerprints, (2) credit report, (3) Web CRD background check, (4) Office of Foreign Assets control check (OFAC), (5) employment verification and education check and (6) reference checks. As a new Associate, you will be required to compete the Uniform Application for Securities Industry Registration form within 3 business days of your hire date. Failure to provide the completed forms within this designated time period may result in rescinding your employment offer."

20. On or about September 22, 2010, Defendant TD sent Plaintiff a welcome email stating that TD was pleased to have him join Defendant TD as a Senior Software Developer, working under Anna Lempert, beginning September 27, 2010.

21. Also on or about September 22, 2010, Kimberly Roberts (Ms. Roberts), an employee of Defendant TD emailed Plaintiff informing him that he must have his fingerprints taken on his first day of work prior to reporting to the office, providing Plaintiff with the address of the fingerprinting vendor to which he should report.

22. On or about September 27, 2010, Plaintiff was fingerprinted as per Defendant TD's request prior to reporting for work.

23. Plaintiff's fingerprints were sent to Defendant FINRA, as is TD's practice of screening potential employees.

24. FINRA compiles reports for TD on job applicants to determine if they are appropriate for hire, including for example Criminal History Record Information Reports ("CHRI Reports"), which are provided to TD and TD's request via FINRA's "Web CRD" Database.

25. FINRA's evaluations, along with other information, are provided to FINRA members such as Defendant TD in reports, such as a report entitled a Web CRD Report ("CRD"). Said CRD includes a variety of information obtained and compiled by FINRA to be used for employment purposes, including but not limited to CHRI Reports, which denote records of arrest but which do not identify whether or not said arrests result in criminal charges or conviction.

26. CRD reports are available for purchase per a fee schedule established by FINRA, and FINRA also charges fees for its services via registration, application and fingerprint processing fees.

27. On or about September 30, 2010, Defendant TD informed Plaintiff via email that his fingerprints had resulted in the discovery of three (3) arrests, about which TD required additional information. TD requested that he go to the police station to obtain such information.

28. Plaintiff complied with TD's request, purchasing, out-of-pocket, his "rap sheet" from the police department and presenting TD with same.

29. On or about October 6, 2010, TD's "Z$Licensing Admin" address emailed Plaintiff to inform him that FINRA issued a disclosure letter identifying the three arrests in

question, requesting certified copies of official documentation within ten days evidencing that said charges were dropped prior to filing.

30. On or about October 12, 2010, Plaintiff rejected a job offer from Triple Point for approximately one hundred forty five thousand dollars ($145,000.00) per annum with a bonus payout of twenty percent (20%), four weeks of vacation time, and one week of sick leave per year.

31. However, as a result of Plaintiff's criminal history as reflected on the CHRI Report and CRD, TD terminated Plaintiff's employment. The termination was effected virtually in front of Plaintiff's peers or colleagues, and to the detriment of Plaintiff's reputation and/or the depiction of Plaintiff's character; Plaintiff was wrongly escorted by security from the work premises and asked to leave, during work hours.

32. Said termination is an "adverse action" as defined by the FCRA § 603. Appendix C to Part 601 of the FCRA, published by the FTC clearly states that said actions include "employment actions affecting consumers that can be considered to have a negative impact … such as … denying employment or promotion." *See* Appendix C to Part 601.

33. Appendix C to Part 601 further states that if any action taken is "based at least in part on information contained in a consumer report," the user must provide notice as provided for in section 615 of the FCRA.

34. As per the FCRA, said notice must include the following: the name, address, and telephone number of the consumer reporting agency that provided the report; a statement that the consumer reporting agency did not make the decision nor can they explain why the decision was made; a statement that the consumer has the right to obtain a free disclosure of his or her file from the consumer reporting agency within sixty (60) days provided he or she requests such in

writing; and a statement explaining the consumer's right to dispute the accuracy or completeness of the information provided by the consumer reporting agency with that agency directly.

35. Specific further obligations are required by Section 604(b) when the user of a consumer report takes adverse actions based on information obtained from a report procured for employment purposes. These are in addition to the duties required by Section 615(a). Specifically, the user must provide the consumer with a copy of the report as well as a summary of his rights prior to taking adverse action.

36. Defendant TD did not provide Plaintiff with any oral, written, or electronic notice that TD was taking adverse action based on Plaintiff's consumer report before or after said actions were taken.

37. Additionally, Defendant TD did not provide Plaintiff with a copy of the consumer report or a summary of his rights either as a prelude to or after said actions were taken.

38. On or about October 27, 2010, Plaintiff emailed TD Human Resources Manager Todd Burke (hereinafter "Mr. Burke") to provide him with documentation that he had never been convicted of any criminal offense.

39. On or about November 4, 2010, following Plaintiff's request and communications, Mr. Burke called Plaintiff to offer him reinstatement. Plaintiff was reinstated and worked for Defendant TD beginning on or about November 22, 2010.

40. On or about November 11, 2011, Plaintiff requested a copy of Plaintiff's consumer reports or background reports employed by TD relating to his employment. Shortly thereafter, in or around November 2011, TD gave Plaintiff notice of termination of employment.

41. Defendant TD did not provide Plaintiff with any oral, written, or electronic notice that TD was taking adverse action based on Plaintiff's consumer report as a prelude to or after

8

said actions were taken. Additionally, Defendant TD did not provide Plaintiff with a copy of the consumer report or a summary of his rights either as a prelude to or after said actions were taken.

42. At the same time, on or about November 29, 2011, Plaintiff requested any and all reports used in making said decision to terminate him.

43. On or about December 11, 2011, Plaintiff emailed TD's "Z$HRSC-Associate Support" address to request copies of all background reports TD had acquired regarding him, including background checks, criminal reports arising out of fingerprinting, employment verifications, credit reports, reference checks, and any other relevant information.

44. On or about December 12, 2011, Plaintiff again emailed TD's "Z$HRSC-Associate Support" address to inform them that while he had received a background check compiled by third party company Sterling Infosystems, Inc. ("Sterling Report"), said report did not evidence any findings pertaining to criminal activity. Thus Plaintiff believed, as he continues to believe, that the Sterling Report was not the only background check TD performed, that other consumer reports on him existed, and he wanted TD to provide him with copies of same.

45. In fact, Defendant TD's only knowledge of the three arrests was evidently derived from the Web CRD Report and/or other FINRA reports. The Sterling report, in compliance with the FCRA did not report any records of arrest which did not lead to conviction.

46. On or about December 13, 2011, an employee of Defendant TD in the HR Service Center Associate Support Department named Sean emailed plaintiff from the "Z$HRSC-Associate Support" address, stating that TD uses Sterling for all background checks and further stating that the Sterling Report was the only report in the system pertaining to Plaintiff.

47. On or about December 14 and 15, 2011, Plaintiff and Sean exchanged emails in which Plaintiff further questioned how TD discovered his arrests, and Sean explained that while

9

he had no further information, Plaintiff could contact Geraldine Mariano ("Ms. Mariano"), Plaintiff's Employment Standards Contact at TD Ameritrade, for further assistance.

48. On or about December 15 and 16, 2011, Plaintiff and Ms. Mariano exchanged emails in which Ms. Mariano initially told Plaintiff that there were no reports to provide other than the Sterling report. Ms. Mariano ultimately forwarded Plaintiff a October 6, 2010 email listing his arrests and directed him to contact the FBI CJIS Division located at 1000 Custer Hollow Road, Clarksburg, West Virginia, 26306, as he "may also be able to get a consumer report" from them.

49. On or about December 17, 2011, Ms. Mariano emailed the Plaintiff, stating, in part, "What you are seeking is a CRD which I do not believe we are authorized to release. Did you explain to FINRA that you are seeking a copy of the CRD? … I believe we have provide to you all that we have to give you."

50. The Exhibit A-1 Authorization Form, as noted above clearly states that "before any adverse action is taken, based in whole or in part on any such report, a copy of the report will be provided to you, along with a statement of your rights."

51. Ms. Mariano's email, as quoted above, clearly evidences that Defendant TD did ***not provide*** Plaintiff with a copy of his CRD report, a report TD considered a consumer report for employment purposes, and thus a report governed by the FCRA. *See infra*.

52. Plaintiff asked Ms. Mariano and TD for all of his reports, or for all documentation that were part of his report, that TD received from FINRA in connection with his employment application, including for example an "NRS," "RAPP," and CRD report which, *inter alia,* contain additional information about Plaintiff and his character or purported criminal background.

10

53. TD declined to provide all reports or attendant documentation, but instead, on or about January 20, 2012, Ms. Mariano provided Plaintiff with his Criminal History Record Information Report ("CHRI Report"). TD has not stated that it provided Plaintiff with all reports or attendant documentation received from FINRA or that are part of the CRD (in connection with his employment application), despite numerous requests by Plaintiff.

54. Said CHRI Report was printed from the Web CRD portal, as evidenced by the header and footer visible on the document. Thus, Defendant TD had complete access to the Web CRD at all relevant times, and providing Plaintiff with such reports would have been feasible and would have imposed little to no hardship on TD. Upon reasonable information and belief, Plaintiff's report was ordered by an employee in TD's Compliance Department, located at its headquarters in Omaha, Nebraska.

## CLASS ACTION ALLEGATIONS

55. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of classes (the "Classes") initially defined as follows:

> **TD Ameritrade Adverse Action Class**
>
> All persons against whom TD Ameritrade, Inc. has suspended, terminated or taken another adverse employment action, based upon a report received from FINRA, Sterling Testing or another third-party within five (5) years preceding the filing of this Complaint until the date of trial.
>
> **TD Ameritrade Application Class**
>
> All persons who, at any time from 5 years preceding the filing of this Complaint until the date of trial, applied for a job with TD Ameritrade and whom TD Ameritrade provided an authorization form to obtain reports identical or substantially similar to the that contained in Group Exhibit A.[1]

---

[1] Unless stated otherwise, references to the "Class" herein are to members of each Class.

11

56. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. While the exact number of Class members is unknown to Plaintiff at this time, such information can be ascertained through Defendant's records.

57. **Existence of Common Questions of Law or Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law or fact exist as to all members of the Classes, including, for example:

   a) whether TD provided an authorization form to obtain reports in connection with employment applications identical or substantially similar to the that contained in Group Exhibit A; and

   b) whether Defendant TD provided sufficient notice prior to and/or after adverse action as required by the FCRA.

58. **Typicality. FED. R. CIV. P. 23(a)(3)).** Plaintiff's claims are typical of the claims of the Class members, and Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

59. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in complex class litigation, and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Classes.

60. **Typicality and Superiority. FED. R. CIV. P. 23(b)(2)-(3).** Questions of law or fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient

adjudication of the controversy. Individual prosecution would prove burdensome, inefficient and expensive given the complex litigation necessitated by Defendant's conduct.

## CAUSES OF ACTION

61. Plaintiff brings the following causes of action, both individually and as representative of the proposed TD Ameritrade Adverse Action Class and the TD Ameritrade Application Class, and in the alternative as permitted or required by applicable facts or law.

### Count I - Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.*

62. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein, and brings Count I individually and on behalf of the TD Ameritrade Adverse Action Class.

63. Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA.

64. Defendant TD is an employer and "user" of Plaintiff's "consumer report," who took subsequent "adverse action" based on said report as defined by the FCRA.

65. The FTC further states that if any action taken is "based at least in part on information contained in a consumer report," the user must provide notice as provided for in section 615 of the FCRA. As per the FCRA, said notice must include the following: the name, address, and telephone number of the consumer reporting agency that provided the report; a statement that the consumer reporting agency did not make the decision nor can they explain why the decision was made; a statement that the consumer has the right to obtain a free disclosure of his or her file from the consumer reporting agency within sixty (60) days provided he or she requests such in writing; and a statement explaining the consumer's right to dispute the accuracy or completeness of the information provided by the consumer reporting agency with

that agency directly.

66. Specific additional obligations are required by Section 604(b) when a user takes adverse actions based on information from a CRA for employment purposes. These are in addition to the duties required by Section 615(a). *See supra*. Specifically, the user must provide the consumer with a copy of the report as well as a summary of his rights prior to taking adverse action.

67. Defendant TD took adverse action based on information from a CRA when it terminated his employment.

68. Defendant TD did not provide Plaintiff with any oral, written, or electronic notice that TD was taking adverse action based on Plaintiff's consumer report before or after said actions were taken.

69. Additionally, Defendant TD did not provide Plaintiff with a copy of the consumer report or a summary of his rights either before or after said actions were taken.

70. The conduct, action, and inaction of Defendant TD was willful, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71. Defendant TD was willful in its noncompliance as it is aware of the requirements under the FCRA and chose to ignore such obligations, including required notice provisions. Additionally, willfulness is shown as Defendant TD has internal corporate counsel, as well as access to external counsel, who are knowledgeable in the requirements set forth under the FCRA and what TD must do to be in compliance with same. Willfulness is also evidenced as Defendant TD's FCRA Authorization Form specifically references CRD reports as consumer reports that will used for employment purposes, yet TD did not comply with FCRA requirements

pertaining to same.

72. In the alternative to the allegation that Defendant TD's violation of the FCRA was willful, Plaintiff alleges that Defendant negligently violated the statute and is liable for Plaintiff's resulting damages pursuant to 15 U.S.C. §1681o.

73. Defendant TD negligently violated the FCRA by using a consumer report obtained for employment purposes as the basis for taking an adverse action against Plaintiff, without fulfilling statutory requirements, including, but not limited to, providing him with proper notice, a copy of the consumer report, and a summary of his rights under the FCRA.

74. Plaintiff and other members of the TD Ameritrade Adverse Action Class were similarly damaged from TD's aforementioned conduct.

75. As a result of these FCRA violations, Defendant TD is liable to Plaintiff and to each Adverse Action Class Member, for actual and/or statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

### Count II - Fair Credit Reporting Act, 15 U.S.C. 1681b

76. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein, and brings Count II individually and on behalf of the TD Ameritrade Application Class.

77. The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* was enacted in order to give consumers fair and equitable protections with regard to the privacy, confidentiality, accuracy, and proper use of their consumer information.

78. The inclusion of indemnity and liability release provisions in TD's authorization or disclosure form to obtain consumer reports violates the requirements set forth for obtaining such authorization under the FCRA.

79. Pursuant to the FCRA, one may not lawfully procure a consumer report, or cause such a report to be procured for employment purposes unless:

   a) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

   b) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

15 U.S.C. §§1681b(b)(2)(A)(i)-(ii) (emphasis added).

80. The disclosure required by clause (i) and the authorization required by clause (ii) are permitted to be contained within the same document, but the Federal Trade Commission has explicitly stated that the form supplied to potential employees "should not include any extraneous information." The FTC further stated as far back as 1998 that inclusion of a waiver such as the one presently at issue "will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes." *See also* paragraph 16, *supra.*

81. Therefore, Defendant TD's inclusion of the liability waiver clause in its authorization or disclosure willfully violates the FCRA's statutory requirements and further willfully disregards the FTC's regulatory guidance as set forth above. *See also* Group Exhibit A.

82. Defendant TD knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

16

83. Defendant TD obtained or had available to it substantial written materials that apprised it of its duties under the FCRA.

84. Despite knowing of these legal obligations, Defendant actively breached its known duties and deprived Plaintiff and members of the TD Ameritrade Application Class of their rights under the FCRA. Defendant's conduct as alleged herein was part of its established procedures for addressing its FCRA obligations.

85. Defendant TD violated the FCRA by including a liability release in the Authorization and Consent Form that Plaintiff and other members of the TD Ameritrade Application Class were systematically required and obligated to complete in application for employment with TD. *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

86. Defendant TD further violated the FCRA by procuring consumer reports pertaining to Plaintiff and other Application Class members without obtaining prior authorization as statutorily required. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

87. Said violations by Defendant were willful too because Defendant knew and/or recklessly disregarded that said Authorization and Consent Form, pursuant to the FCRA, could not contain any terms other than those specifically required under the FCRA.

88. Defendant's willful conduct is further evidenced by its inclusion of said unlawful liability waiver, be it due to a deliberate or reckless disregard of the requirements specifically outlined in 15 U.S.C. § 1681b(b)(2)(A)(i). Specifically, willful conduct may be inferred from the fact that Defendant is a multistate entity with access to legal advice both through their respective corporate counsel as well as outside employment counsel.

89. As a result, Plaintiff and the TD Ameritrade Application Class are entitled to statutory damages of a minimum of one hundred dollars ($100.00) and a maximum of one

thousand dollars ($1,000.00) for each and every violation of the FCRA, as per 15 U.S.C. § 1681n(a)(1)(A).

90. Plaintiff and TD Ameritrade Application Class are additionally entitled to punitive damages for each violation of the FCRA, as per 15 U.S.C. § 1681n(a)(2).

91. Plaintiff and TD Ameritrade Application Class are further entitled to recovery of their costs and attorneys' fees, as per 15 U.S.C. § 1681n(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, prays that the Court enter an order that provides for judgment for Plaintiff and similarly situated Class members, and against Defendant, and for the following relief:

a. Certify the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff and his counsel to represent the Classes;

b. Find the conduct, action, and inaction of Defendant violated the FCRA and applicable law as set forth above;

c. Award damages available to Plaintiff and the Class under the FCRA and applicable law, including actual, compensatory, statutory, punitive and/or other damages as set forth above or as deemed appropriate by the Court;

d. Award attorneys' fees and costs to Plaintiff's counsel as permitted by applicable law; and

e. Provide such other and further relief that the Court deems just and proper.

TRIAL BY JURY IS DEMANDED

JOSHUA CALLOWAY, on behalf of himself and all others similarly situated.

By: /s/ Ilan Chorowsky
One of Plaintiff's Attorneys

PROGRESSIVE LAW GROUP, LLC
ILAN CHOROWSKY
ilan@progressivelaw.com
MARK BULGARELLI
markb@progressivelaw.com
505 N. LaSalle St., Suite 350
Chicago, Illinois 60654
(312) 787-2717 (voice)

Attorneys for Plaintiff